## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WILLIAM CAMBRIDGE, and MARY PENATZER, Individually and on Behalf of All Other Persons Similarly Situated,          Plaintiffs, <br><br> -against- <br><br> SHEETZ, INC., <br><br>          Defendant. | Case No. <br> 1:17-cv-01649 (JEJ) |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL

---

Marc S. Hepworth
David A. Roth
Charles Gershbaum
Rebecca Predovan
HEPWORTH GERSHBAUM & ROTH PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199

Gregory Spizer
ANAPOL WEISS
One Logan Square
130 N. 18th St, Ste 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130

**Attorneys for Plaintiffs and Opt-Ins**

# TABLE OF CONTENTS

I.  BACKGROUND ...........................................................................................2

II.  PROCEDURAL HISTORY .........................................................................5

III.  ARGUMENT................................................................................................7

  A. THE CLASS SATISFIES RULE 23 ...............................................8

    1. The Settlement Class Is Sufficiently Numerous...........................10

    2. Commonality Is Satisfied ............................................................10

    3. Typicality Is Satisfied...................................................................11

    4. Class Representatives and Class Counsel Are Adequate .............11

    5. Rule 23(b) is Satisfied .................................................................12

  B. THE CLASS-ACTION SETTLEMENT IS FAIR AND REASONABLE UNDER RULE 23 ........................................................13

    1.  The Complexity and Expense of Further Litigation Weighs in Favor of Approving the Settlement (*Girsh* factor 1).......................................................14

    2. The Reaction of the Class to the Settlement Weighs in Favor of Final Approval (*Girsh* factor 2)...................................................14

    3. The Parties Conducted Sufficient Discovery and the Settlement Agreement is the Product of Informed, Arms-length Negotiations, which Warrants Final Approval (*Girsh* factor 3)...................................15

    4. The Risks of Establishing Liability and Damages Weigh in Favor of Final Approval (*Girsh* factors 4-5)............................................15

    5. Maintaining the FLSA and Rule 23 Class through Trial is Not a Certainty, which Weighs in Favor of Final Approval (*Girsh* factor 6).............................16

    6. The Gross Settlement Amount, Ability of Defendant to Withstand a Greater Judgment, and Reasonableness of the Proposed Settlement Weigh in Favor of Final Approval (*Girsh* factors 7-9)...................................................16

    7. Notice Was Adequately Given ....................................................19

  C. THE COLLECTIVE ACTION SETTLEMENT IS A FAIR AND REASONABLE SETTLEMENT OF A BONA FIDE DISPUTE UNDER THE FLSA........................................................................20

  D. THE SERVICE AWARDS ARE REASONABLE ........................21

  E. THE COURT SHOULD AWARD THE REQUESTED FEES AND COSTS ...................................................................................................22

1. Fees: Percentage-of-Recovery Method ...........................................................24

a. Size of the Fund and Number of Persons Benefitted (Factor 1)....................27

b. Presence or Absence of Substantial Objections (Factor 2) ...........................28

c. Skill and Efficiency of Attorneys Involved and the Amount of Time Devoted to the Case (Factors 3 and 6) ............................................................................28

d. Complexity and Duration of the Litigation (Factor 4) ..................................30

e. Risk of Nonpayment (Factor 5) ....................................................................31

f. Awards in Similar Cases (Factor 7) ..............................................................31

g. Percentage Fee That Would Have Been Negotiated if the Case Had Been Subject to a Private Contingent Fee Arrangement (Factor 9) ..........................32

2. Fees: Lodestar Cross-Check ........................................................................32

3. Costs ...............................................................................................................34

IV.    CONCLUSION ............................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) .............................................................................34

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................8

*Aquilino v. Home Depot, U.S.A., Inc.*,
    2011 WL 564039 (D.N.J. Feb. 15, 2011) .....................................................17, 18

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .............................................................................22

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................20, 30

*Bonett v. Educ. Debt Servs. Inc.*,
    No. 01-6528, 2003 WL 21658267 (E.D.Pa. May 9, 2003) .........................15, 16

*Bredbenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011)..............................................23, 28, 33

*Brumley v. Camin Cargo Control, Inc.*,
    2012 WL 1019337 (D.N.J. Mar. 26, 2012) ................................................25, 30

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) ...............................................................................8

*Careccio v. BMW of N. Am. LLC*,
    2010 WL 1752347 (D.N.J. Apr. 29, 2010).......................................................28

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...............................................................................................8

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015) ...............................................................................7

*Chian v. Veneman*,
    385 F.3d 256 (3d Cir. 2004) .............................................................................10

iii

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ..............................................................11

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
795 F.3d 380 (3d Cir. 2015) ................................................................9

*Costello, et. al. v. Kohl's Illinois Inc. et. al.*,
1:13-cv-1359 (S.D.N.Y.) ....................................................................29

*Craig v. Rite Aid Corp.*,
2013 WL 84928 (M.D. Pa. Jan. 7, 2013)....................................*passim*

*Creed v. Benco Dental Supply Co.*,
2013 WL 5276109 (M.D. Pa. Sept. 17, 2013)...................20, 25, 28, 32

*Crevatas v. Smith Management and Consulting, LLC*,
2017 WL 1078174 (M.D. Pa. 2017) ....................................................21

*In re Datatec Systems, Inc. Securities Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ....................................8, 31

*Davis v. Essex Cnty.*,
Civil Action No. 14-cv-l122, 2015 U.S. Dist. LEXIS 161285
(D.N.J. Dec. 1, 2015) ...........................................................................7

*Diclemente v. Adams Outdoor Advertising*,
2016 WL 3654462 (M.D. Pa. 2016) ....................................................20

*Erie Cnty. Retirees Ass'n v. Cnty. of Erie*,
192 F. Supp. 2d 369 (W.D. Pa. 2002)..................................................24

*Fermin v. Rite Aid of New York, Inc.*,
1:08-cv-11364 (S.D.N.Y.) ..................................................................29

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
604 F. Supp. 446 (E.D. Pa. 1985).........................................................8

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...........................................................11, 16

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......................................................8, 14, 21

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ...................................................................23, 24, 27

*Haught v. Summit Resources, LLC*,
    2016 WL 1301011 (M.D. Pa. 2016) (Jones, J.)...................................................24

*Hegab v. Family Dollar Stores, Inc.*,
    2015 WL 1021130 (D. N.J., 2015) ............................................................*passim*

*Hensley v. Eckerhart*,
    461 U.S. 424,436 (1983)......................................................................................27

*Huyett v. Murlin*,
    2018 WL 3155795 (M.D. Pa. 2018) ...................................................................20

*In re Ikon Office Solutions Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................27

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
    2009 U.S. Dist. LEXIS 60790 ............................................................................12

*Lan v. Ludrof*,
    2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ......................................................28

*Lucia v. McClain & Co.*,
    Civil Action No. 11-cv-930, 2015 U.S. Dist. LEXIS 164584
    (D.N.J. Dec. 8, 2015) (42%)................................................................................25

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ...........................................................................7

*Marcus v. BMW of N.A., LLC*,
    687 F.3d 583 (3d Cir. 2012) ...............................................................................10

*Martin v. Foster Wheeler Energy Corp.*,
    2008 WL 906472 (M.D. Pa. 2008) ...............................................................25, 32

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008)......................................................................17

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1998)..............................................................................................4

*In Re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................26, 33

*Palamara v. Kings Family Rest.*,
  2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ....................................................21

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  148 F.3d 283 (3d Cir. 1998) .........................................................*passim*

*In re Rent-Way Securities Litigation*,
  305 F. Supp. 491 (W.D. Pa. 2003)........................................................25, 26, 33

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012)........................................................14

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...........................................................23, 25, 28, 33

*Rouse v. Comcast Corp.*,
  No. 14-1115, 2015 U.S. Dist. LEXIS 49347 .....................................................25

*Smith v. Dominion Bridge Corp.*,
  2007 WL 1101272 (E.D. Pa. Apr. 11, 2007).....................................................24

*Souryavong v. Lackawanna Cty.*,
  2017 WL 4159604 (3d Cir. 2017) .......................................................4

*Stallard v. Fifth Third Bank*,
  slip op., Dkt. No. 181 (W.D. Pa. Feb. 25, 2015) ...............................................32

*Tavares v. S-L Distribution Co. Inc.*,
  2016 WL 1743268 (M.D. Pa. May 2, 2016) (Jones, J.) ........................23, 27, 32

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (March 22, 2016) .....................................................10

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D. N.J. 2005)........................................................19, 22

*In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*,
  512 F. Supp. 2d 279 (E.D. Pa 2007).....................................................25, 26, 33

*Walsh v. Great Atl. & Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J.), *aff'd,* 726 F.2d 956 (3d Cir. 1983)................................8

*Weiss v. Mercedes–Benz of N. Am., Inc.*,
  899 F. Supp. 1297 (D.N.J. 1995)........................................................................15

*Wetzel v. Liberty Mut. Ins. Co.*,
  508 F.2d 239 (3d Cir. 1975) ...............................................................................11

*Youngblood v. Family Dollar*,
  1:09-cv-03176 (S.D.N.Y) ....................................................................................29

*Zavala v. Wal Mart Stores Inc.*,
  691 F.3d 527 (3d Cir. 2012) ................................................................................17

**Statutes**

43 Pa. Cons. Stat. Ann. § 260.9a ..................................................................................3

29 U.S.C. § 255(a) .......................................................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................*passim*

This Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") lawsuit has been settled, and Plaintiffs William Cambridge and Mary Penatzer along with the other FLSA Class Members and Pennsylvania Rule 23 Class Members who are current and/or former Assistant Managers (collectively "AMs"), employed by Defendant Sheetz, Inc., ("Sheetz") (collectively "Plaintiffs"), submit this unopposed brief in support of their motion for judicial approval of the settlement.[1][2]  Plaintiffs submit that this is a favorable result particularly in light of the claims, which due to reclassification of the AM position were capped as of January 8, 2016. The fully executed "Settlement Agreement" ("Agreement") is attached to Plaintiffs' instant motion and was originally filed with the Court on February 25, 2019.  (Dkt. No. 91-1)

Class Counsel submit that the Settlement more than satisfies the requirement that the settlement be a fair, reasonable and adequate resolution of a bona-fide dispute for settlement approval. The preliminarily approved Settlement in the

---

[1] Although Sheetz, Inc. does not oppose this motion, and seeks final approval of the settlement agreement, Sheetz, Inc. does not adopt or validate the statements or arguments contained herein. The statements and arguments contained herein are Plaintiffs', not Sheetz, Inc.'s.

[2] Attached hereto in support of the motion for final approval is the Declaration of Marc S. Hepworth ("Hepworth Decl.") with attached exhibits ("Ex. __") and the Declaration of Jennifer Keough with attached exhibits ("Ex. __").  The proposed Final Approval Order is attached hereto as Exhibit D to the Settlement Agreement, which has been revised to include the new Local Class Counsel, Gregory Spizer, at Anapol Weiss.  (Hepworth Decl. ¶ 3).

amount of $1,800,000.00 was reached after extensive investigation, litigation including the granting of a motion for Conditional certification, the exchange of documents and information between the parties, and arms-length and good faith negotiations.

Plaintiffs respectfully request that the Court (i) certify the FLSA Class and Pennsylvania Rule 23 Class for settlement and final approval purposes, (ii) approve Plaintiff William Cambridge and Mary Penatzer as the Class Representatives for settlement purposes; appoint as Lead and Class Counsel Hepworth, Gershbaum & Roth, PLLC; appoint as Local Class Counsel for the FLSA Class and Pennsylvania Rule 23 Class Gregory Spizer of the law firm Anapol Weiss; finally approve the settlement as fair, reasonable, and adequate under the FLSA and Rule 23, (iii) approve the service awards for the Class Representatives, (iv) approve the award of fees and costs for Class Counsel and Local Class Counsel; (v) enter the Final Approval Order; (vi) and reserve jurisdiction over the implementation, administration, and enforcement of the judgment and the Agreement and all matters ancillary to the same.

## I.    BACKGROUND

This is a case for unpaid overtime based on the allegation that Sheetz AMs were misclassified as exempt. Plaintiffs are current and/or former Sheetz AMs.

Class Counsel is convinced that the settlement amount in this case –

$1,800,000 for the FLSA and Pennsylvania Rule 23 Class Members – is an outstanding result, as Plaintiffs faced tremendous litigation risk. Because Defendant reclassified the AM position on January 8, 2016, Plaintiffs and other AMs were limited by the statute of limitations to approximately four (4) months of potential damages from September 13, 2015 to January 8, 2016 under the FLSA if willfulness could not be established and approximately 16 months from September 13, 2014 to January 8, 2016 under the PMWA. *See* 43 Pa. Cons. Stat. Ann. § 260.9a; 29 U.S.C. § 255(a); (Hepworth Decl. ¶ 6) Plaintiffs have not moved for or obtained certification of the Pennsylvania Rule 23 Class and Defendant may have successfully moved for decertification of the FLSA collective. If Plaintiffs did not prevail on a motion to certify the Pennsylvania Rule 23 Class or a motion by Defendant to decertify the FLSA collective, Class Counsel estimates potential damages as including only the claims of named Plaintiffs and the opt-ins prior to conditional certification notice, or approximately $25,000.00, which is far less than the $1,800,000.00 settlement here.

Further, the parties would have disagreed about the proper method for calculating damages, the inputs to the calculation (namely, the average number of hours worked and whether Defendants would have been eligible for a fluctuating work week analysis), and whether Sheetz acted willfully or in good faith (which could extend the limitations period under the FLSA from two years to three years

and impose liquidated damages). In addition, Sheetz almost certainly would have opposed class certification, moved to decertify the FLSA collective, and likely would have moved for summary judgment. If Plaintiffs proceeded to trial, they might not have prevailed. And even if Plaintiffs were to prevail at trial, Plaintiffs would likely face post-trial motions and appeals.

Your Honor captured this point in approving a hybrid FLSA retail manager misclassification case settlement when Your Honor wrote, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013).

First, absent settlement, Defendant will vigorously assert that the FLSA claim is covered by a two-year limitations period rather than the three-year period encompassed in the settlement. The FLSA provides a two-year statute of limitations; but, a three-year limitations period will apply to "a cause of action arising out of a willful violation." 29 U.S.C. § 255(a). To obtain a three-year statute of limitations, plaintiff must establish that the employer's conduct was willful. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1998). In this Circuit to prove a willful violation, an employee must show that the employer actually knew of the specific FLSA requirement at issue at the time of the violation and intentionally did not comply with it. *See Souryavong v. Lackawanna Cty.*, 2017 WL 4159604 (3d Cir. 2017).

The practical effect of the FLSA two-year statute of limitations is that, even if Plaintiffs succeed on the merits of their claims, the vast majority of FLSA collective action members would be barred by the statute of limitations, from recovering any damages absent a showing of willfulness. That is because all but approximately seven (7) of the FLSA collective action members opted-into the action after March 6, 2018 (when conditional certification was granted), more than two years after Sheetz reclassified AMs as non-exempt employees. (Dkt. No. 3) Thus, an unfavorable finding regarding willfulness would doom the claims of all but approximately seven AMs under the FLSA.

## II.     PROCEDURAL HISTORY

Plaintiffs filed this case on September 13, 2017, alleging overtime violations under FLSA on behalf of AMs who worked for Sheetz at any location within the United States; and under the PMWA, on behalf of AM's who worked for Sheetz, at any location in Pennsylvania.

On January 8, 2016, nearly 20 months prior to the filing of this lawsuit, Sheetz reclassified the AM position as non-exempt, which resulted in a limited time for Plaintiffs' claims.

Consequently, with such a short period of potential liability – a total of approximately four months under the FLSA if willfulness was not established – Class Counsel, acting to preserve as much time as possible in the FLSA statute of

limitations, filed a motion for conditional certification under the FLSA on December 22, 2017 (Dkt. No. 25). On March 6, 2018, this Court granted Plaintiffs' motion for conditional certification and notice was sent out shortly thereafter to prospective collective members. (Dkt. No. 43). Approximately 235 AMs joined the action by signing and filing a Consent to Join Form ("Opt-In Plaintiffs"). (Hepworth Decl. ¶ 11)

On April 16, 2018, the parties stipulated to stay formal discovery pending mediation, which mediation would occur by August 2018. (Dkt. No. 55).

On August 16, 2018, the parties engaged in mediation before Carole Katz, Esq., a mediator experienced with wage and hour class action cases. (Hepworth Decl. ¶¶ 15, 27) The case did not settle at mediation and in fact took continued negotiation between Class Counsel and Defendant's counsel to come to an agreement about two months later. (Hepworth Decl. ¶ 16) While the negotiations were going on, Class Counsel was negotiating second phase discovery and actively speaking with the collective members of the class in preparation for an unsuccessful attempt at resolution. (Hepworth Decl. ¶ 17) Ultimately and on October 16, 2018, the parties reached a settlement in principal, with Defendant agreeing to pay a Maximum Gross Settlement Amount of $1,800,000.00. (Hepworth Decl., ¶ 18)

The court preliminarily approved the settlement on February 27, 2019 and

conditionally appointed Hepworth, Gershbaum & Roth, PLLC as Class Counsel.

(Dkt No. 94)  The Settlement Administrator sent the court-approved settlement

notice to all Pennsylvania Rule 23 Class Members, affording those class members

an opportunity to participate in the settlement, exclude themselves from the

settlement, or object to the settlement's terms.  Significantly, not a single Class

Member objected to the settlement.

## III.    ARGUMENT

An FLSA settlement generally should be approved if it reflects "a fair and

reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food

Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Cheeks v.

Freeport Pancake House, Inc.*, 796 F.3d 199, 204 n. 4 (2d Cir. 2015) (requiring

judicial approval of settlements and listing other circuits that also follow the

*Lynn's Food* majority rule); *Davis v. Essex Cnty.*, Civil Action No. 14-cv-l122

(CCCJBC), 2015 U.S. Dist. LEXIS 161285, at *5 (D.N.J. Dec. 1, 2015) (citing

*Lynn's Food Stores, Inc.*).[3]

Federal Rule of Civil Procedure 23(e) also mandates that a class action

cannot be settled without court approval:

> A class action shall not be dismissed or compromised without the approval
> of the court, and notice of the proposed dismissal or compromise shall be
> given to all members of the class in such manner as the court directs.

*See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998) ("*Prudential II*"). The ultimate determination whether a proposed class action settlement warrants approval resides in the court's discretion. *In re Datatec Systems, Inc. Securities Litig.*, 2007 WL 4225828 at *2 (D.N.J. Nov. 28, 2007) (citing *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

While the Court has discretion in determining whether to approve a settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd,* 726 F.2d 956 (3d Cir. 1983). The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974).

## A. THE CLASS SATISFIES RULE 23

Before certifying a lawsuit to proceed as a class action, the court must

determine that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "If the Rule 23(a) requirements are met, then a court must consider whether the class fits within one of the three categories of class actions set forth in Rule 23(b)." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 392 (3d Cir. 2015). When the plaintiffs choose to proceed under Rule 23(b)(3), as Plaintiffs do here, the court must determine whether "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

This court has already weighed and preliminarily certified, for settlement purposes only, an FLSA Class and Rule 23 class in its preliminary approval order, and the class representatives now move for final certification under Rule 23(c)(1).

The court must now assess whether the requirements of Rule 23(a) and (b) are satisfied before finally approving the class settlement. For the reasons stated below, and essentially for the reasons stated in Plaintiffs' motion for preliminary

approval ("Pls." Motion for Preliminary Approval"), they are.[4] (Pls. Motion for Preliminary Approval at 19-30)

## 1. The Settlement Class Is Sufficiently Numerous

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no minimum number of members needed for a suit to proceed as a class action," but the numerosity requirement is generally satisfied when "the potential number of plaintiffs exceeds 40." *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Because there are 612 members of the Pennsylvania Rule 23 Class, the numerosity requirement has been satisfied. (Hepworth Decl. ¶ 20).

## 2. Commonality Is Satisfied

The commonality standard of Rule 23(a)(2) is not a high bar; it will be satisfied if the Plaintiffs share at least one question of law or fact with the class. *Chian v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). Commonality is satisfied because Plaintiffs and the Class Members share the common contention that they were all allegedly improperly classified as exempt by a corporate decision as to all

---

[4] The prerequisites for a certification of a FLSA collective action class are "no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (March 22, 2016). This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class.

AMs and all were not paid overtime for work they performed in excess of 40 hours per week. (Plaintiffs' Complaint, "Pls. Compl.," ¶¶ 45, 52 ,65).

### 3. Typicality Is Satisfied

The typicality requirement is often satisfied for the same reason the commonality requirement is satisfied. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005). Typicality is satisfied because Plaintiffs and the Class members worked for Sheetz as AMs, allege the same injury, and seek the same relief.

### 4. Class Representatives and Class Counsel Are Adequate

The final Rule 23(a) inquiry tests whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *see also Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

The class representatives have fairly and adequately represented the interests of the class. Both Plaintiffs provided extensive information concerning their job duties and Defendant's pay practices and submitted declarations in support of

Plaintiffs' motion for conditional certification. (Dkt Nos. 25-5, 25-8). Moreover, there is no indication that Plaintiff Cambridge or Penatzer has interests antagonistic to those of the class and Defendant is not contesting this issue. Furthermore, adequacy is easily met here with regard to Class Counsel's qualifications – plaintiffs' attorneys, proposed Settlement Class Counsel, are exceedingly experienced and competent in wage and hour litigation and have successfully litigated class and collective wage/hour cases and have obtained settlements that, to date, approach 100 million dollars. (Hepworth Decl., ¶ 25.)

**5. Rule 23(b) is Satisfied**

Rule 23(b) is satisfied if any one of its three prongs is satisfied. Rule 23(b)(3), the prong at issue in this case, is satisfied where (1) common questions of law or fact predominate over individual questions; and where (2) a class action is a superior method to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3). Predominance is satisfied because Plaintiffs allege a common course of corporate directed action by Sheetz, Inc. *See In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, at *16-17 (E.D. Pa. July 16, 2009).

The superiority analysis considers four factors: (1) class members' individual interest in controlling the prosecution of the action; (2) the extent of similar litigation previously commenced by members of the class; and (3) the

desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, Pennsylvania Rule 23 Class Members have little interest in prosecuting separate actions given their potential recoveries. Moreover, Pennsylvania Rule 23 Class Members were given an opportunity to opt out. Further, Class Counsel know of no Class Member who has filed other litigation concerning this controversy. In addition, resolving all of the Pennsylvania Rule 23 Class Members' state law claims in a single proceeding—rather than in multiple proceedings—allows for substantial economies of time, effort and expense. Further, maintaining the action in this forum is desirable because the Court has supervised this case since its inception and is highly familiar with the relevant issues. Lastly, there are no likely difficulties in managing this class action.

## B. THE CLASS-ACTION SETTLEMENT IS FAIR AND REASONABLE UNDER RULE 23

To determine whether the class settlement warrants final approval, courts in the Third Circuit have the discretion to weigh several factors, including (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness

of the settlement fund in light of the best possible recovery; and (9) the range of

reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation.  *E.g.*, *Girsh v. Jepson*, 521 F.2d at 157.  These factors

all weigh in favor of approving the settlement as fair and reasonable.

## 1.    The Complexity and Expense of Further Litigation Weighs in Favor of Approving the Settlement (*Girsh* factor 1)

The settlement provides "immediate and substantial benefits" to Settlement

Class Members and avoids the large amount of expense involved in further

litigation.  *See Hegab v. Family Dollar Stores, Inc.*, 2015 WL 1021130 at *6 (D.

N.J., 2015); *see also, Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012)

(where settlement sought before dispositive motions filed, the first *Girsh* factor

weighed in favor of settlement in wage-hour action).

## 2. The Reaction of the Class to the Settlement Weighs in Favor of Final Approval (*Girsh* factor 2)

Here, the Class Representatives agreed that the settlement was fair and in the

best interests of the class and not a single class member objected to the settlement.

Thus, given the Court's preliminary approval and the complete absence of any

objections by Settlement Class Members, the second *Girsh* factor weighs in favor

of final approval.

**3. The Parties Conducted Sufficient Discovery and the Settlement Agreement is the Product of Informed, Arms-length Negotiations, which Warrants Final Approval (*Girsh* factor 3)**

The parties reached this class-action settlement agreement after substantial litigation and discovery — including a motion for conditional certification of the FLSA collective action—and extended arms'-length negotiations, including a mediation conducted by Carole Katz, Esq.  (Hepworth Decl., ¶ 15).[5]  Because discovery allowed the parties to reach an arm's length settlement with "a clear view of the strengths and weaknesses of their case," the third *Girsh* factor weighs in favor of approval.  *See Bonett v. Educ. Debt Servs. Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D.Pa. May 9, 2003).

**4. The Risks of Establishing Liability and Damages Weigh in Favor of Final Approval (*Girsh* factors 4-5)**

To continue through trial would expose the parties to significant risks.  *See Weiss v. Mercedes–Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).  Plaintiffs believe their respective claims or defenses are strong, but also recognize that they face litigation risk. Even if liability could be established, Plaintiffs recognize that significant uncertainties exist as to the fact and amount of damages given different views in the case law about how damages should be calculated in a misclassification case such as this.  *See Craig*, 2013 WL 84928 at *9 (method of

_____

[5] A full discussion of discovery is set out in the Declaration of Marc Hepworth.  (Hepworth Decl. ¶¶ 6-14)

damage calculations was crucial unresolved issue that weighed in favor of

settlement approval). In these circumstances, the Court should allow the parties to

"yield[] the[ir] highest hopes in exchange for certainty and resolution." *In re Gen.*

*Motors*, 55 F.3d at 806.

**5. Maintaining the FLSA and Rule 23 Class through Trial is Not a Certainty, which Weighs in Favor of Final Approval (*Girsh* factor 6)**

No class has been certified in this action. If the litigation proceeds, there is a

risk that the court will not certify a class and/or decertify the collective. Because

class and further collective treatment would be hotly contested on both sides, the

sixth *Girsh* factor weighs in favor of approval. *See Bonett*, 2003 WL 21658267 at

*6.

**6. The Gross Settlement Amount, Ability of Defendant to Withstand a Greater Judgment, and Reasonableness of the Proposed Settlement Weigh in Favor of Final Approval (*Girsh* factors 7-9)**

The settlement amount of $1,800,000.00 is favorable, especially in light of

the considerable risk that Plaintiffs and the class members face as well as the size

of Plaintiffs' and class members' claims.[6]

For other reasons as well, the settlement is favorable. First, it is uncertain

what amount Plaintiffs could recover if they obtained a verdict in this action and

that verdict was affirmed on appeal. That is because the parties would dispute both

---

[6] See discussion of damages *supra* at 2-6.

the number of overtime hours and the proper formula for computing overtime. *See McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448, 462 (D.N.J. 2008) (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement). Plaintiffs have the burden of proof as to the number of hours of overtime worked and since Defendant kept records of hours worked with punch data, this would be another difficult obstacle for Plaintiffs to overcome. Moreover, the risk of what method of calculating damages would be applied weighs in favor of settlement. *See Craig*, 2013 WL 84928 at \*9

Further, there is a risk that Plaintiffs would not successfully certify a Rule 23 class action, defend against a motion for decertification of the FLSA collective, or maintain a Rule 23 class or FLSA collective through trial. Defendant would likely argue that the differences among various stores and other individualized questions would warrant decertification of a collective. Although Plaintiffs disagree, defendants in other cases have prevailed on such arguments. *See, e.g., Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537–38 (3d Cir. 2012) (denying collective certification of assistant store manager claims).

Further, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. The status of misclassification cases under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendant's position. For example, in *Aquilino v. Home Depot, U.S.A.,*

*Inc.*, 2011 WL 564039, at *11–12 (D.N.J. Feb. 15, 2011), the Court granted decertification and found that there were substantial differences in the factual and employment settings of Home Depot's merchandising assistant store managers, that job responsibilities and duties varied from store to store, from shift to shift, and in some cases from subordinate employee to subordinate employee, which precluded the Court from finding any real uniformity among the plaintiffs and the opt–ins. Although Plaintiffs believe this case is distinguishable, Defendant would likely argue that similar to *Aquilino* the AM position is too disparate for class or collective treatment.

In resolving whether a settlement is fair and reasonable, the true question is whether, in light of these risks, Plaintiffs are getting good value. Plaintiffs covered by the settlement will be receiving approximately $1,619.28 after reductions for the proposed attorney's fees and costs, service payments, and administrator costs, while before those deductions the average award is approximately $2,493.07. (Hepworth Decl. ¶ 22). These amounts are substantial for the claims at issue, even more so when the limited claims period, due to reclassification of the AM position is considered.[7] Using what Class Counsel believes to be a reasonable set of assumptions (Defendant disputes these figures) Plaintiffs estimate that damages

---

[7] As stated previously, potential collective members could only recover approximately four months under the FLSA if willfulness was not established.

range from approximately $25,000.00 (assuming a three-year statute of limitations period for the named plaintiffs, a two-year statute of limitations period for the FLSA opt-ins, no Rule 23 class certification, even without decertification of the FLSA collective, and no liquidated damages) to approximately $5,958,654.00 (assuming Rule 23 class certification, no decertification of the FLSA collective, a three-year statute of limitations period for FLSA opt-ins, no fluctuating workweek, and no liquidated damages). In deciding reasonableness, courts do not speculate as to the best possible recovery; on the contrary, they consider the risk of little or no recovery at all. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D. N.J. 2005).

**7. Notice Was Adequately Given**

The Court-approved notice (the "Notice") set forth the recipient's individual settlement amount, a description of the claims being released in the settlement, and the time and location of the Final Approval and Fairness Hearing. (Dkt. No. 91-1, Hepworth Decl., Ex. E to Agreement) The Notice explained that individuals had a right to object to the settlement and to exclude themselves from the settlement. (*Id.*) Pursuant to the Settlement Agreement, and in accordance with the Court's Preliminary Approval Order, (Dkt. No. 94), the Notice was mailed to each of the 487 Pennsylvania Rule 23 Class Members who were not also FLSA Class Members. (Keough Decl. ¶ 5). The Claims Administrator conducted advanced

address research for 17 returned notices and remailed 11 notices to updated

addresses, four of which were again returned as undeliverable.  (Keough Decl. ¶ 6).

## C. THE COLLECTIVE ACTION SETTLEMENT IS A FAIR AND REASONABLE SETTLEMENT OF A BONA FIDE DISPUTE UNDER THE FLSA

As stated previously, "A settlement agreement under the FLSA satisfies

judicial review if it is a 'fair and reasonable resolution of a bona fide dispute over

FLSA provisions' and does not impermissibly frustrate the implementation of the

FLSA.  *See Huyett v. Murlin*, 2018 WL 3155795 at *1 (M.D. Pa. 2018) (internal

quotations omitted) citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355 (11th Cir.

1982); *see also Diclemente v. Adams Outdoor Advertising*, 2016 WL 3654462 at

*2 (M.D. Pa. 2016) ("A bona fide dispute under the FLSA includes computation of

back wages.") (Plfs.' Mem. Preliminary Approval at 35).  "Because, under the

FLSA, parties may elect to opt in but a failure to do so does not prevent them from

bringing their own suits at a later date, FLSA collective actions do not implicate the

same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293

F.R.D. 467, 476 (S.D.N.Y. 2013). "Accordingly, the standard for approval of an

FLSA settlement is lower than for a class action under Rule 23." *Id.*

For substantially the same reasons that the Pennsylvania Rule 23 Class

settlement is fair and reasonable, the proposed settlement under the FLSA is fair

and reasonable, especially under this lenient standard. *See Creed v. Benco Dental*

*Supply Co.*, 2013 WL 5276109 at *2 (M.D. Pa. Sept. 17, 2013) ("[I]n assessing the fairness and reasonableness of an agreement settling a FLSA collective action, …district courts in this circuit have applied the factors set forth in *Girsh v. Jepson*…") (internal quotations omitted).

## D. THE SERVICE AWARDS ARE REASONABLE

Courts in this circuit regularly approve incentive awards for the class representatives. *See, e.g.*, *Palamara v. Kings Family Rest.*, 2008 WL 1818453, at *6 (W.D. Pa. Apr. 22, 2008). The enhancement award is designed "'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Hegab*, 2015 WL 1021130, at *16 (quoting *Dewey v. Volkswagen of Am.*, 729 F. Supp. 2d 546, 577 (D.N.J. 2010)). These enhancement awards often range between $2,500 and $20,000 per named plaintiff. *See id.* (collecting cases).

The court should approve the proposed service awards of $2,500 each for Plaintiffs Cambridge and Penatzer. *See Crevatas v. Smith Management and Consulting, LLC*, 2017 WL 1078174 (M.D. Pa. 2017) (awarding lead plaintiff $2,500 as a service award "in light of the small size of the service award compared to the total size of the common fund" and where lead plaintiff agreed to a general release broader than limited release applicable to other plaintiffs).

## E. THE COURT SHOULD AWARD THE REQUESTED FEES AND COSTS

When the court certifies a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts in the Third Circuit "generally use one of two methods for assessing the reasonableness of attorneys' fees—a percentage- of-recovery method or a lodestar method." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013). The Court of Appeals has described the circumstances in which each method should be used:

> The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure. The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation. It may also be applied in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method. Although each of these methods is generally applied to certain types of cases, we have noted previously that it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation.

*Prudential II*, 148 F.3d at 333 (internal citations quotation marks omitted).

Thus the percentage-of-recovery method is favored in cases involving a common fund, as the percentage-of-recovery method provides a strong incentive for class counsel "to obtain the maximum possible recovery in the shortest time possible under the circumstances." *Varacallo*, 226 F.R.D. at 249 (internal

quotations omitted). "Indeed, [the percentage-of-recovery method] is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011).

Courts in the Third Circuit have identified ten factors to be considered under the percentage-of-recovery method: (1) the size of the fund and the number of persons benefitted, (2) whether members of the class have raised substantial objections to the settlement terms or fee proposal, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, and (7) fee awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel, relative to the efforts of other groups; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement; and (10) innovative terms of the settlement.[8]  *Tavares v. S-L Distribution Co. Inc.*, 2016 WL 1743268 at *10 (M.D. Pa. May 2, 2016) (Jones, J.); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

To cross-check the fee award under the percentage-of-recovery method using

---

[8] Factor (8), which "seeks to compare the actions of government prosecutions and agency litigation to the instant private litigation," and (10) are not applicable to the instant case. *See Tavares*, 2016 WL 1743268 at *12.

the lodestar method, the court should multiply the number of hours the plaintiffs' attorneys worked on the case by a reasonable hourly billing rate for those services, taking into account the prevailing billing rates in the region, the nature of the services provided, and the experience of the attorneys. *Gunter*, 223 F.3d at 195 n.1. Once the court arrives at that lodestar amount, the court may "adjust the award upward or downward to reflect the particular circumstances of a given case." *Id.* The court's calculations "should be reduced to writing." *Id.*

## 1. Fees: Percentage-of-Recovery Method

As stated above, the percentage-of-recovery method is favored in common fund cases and should be used here, as it incentivizes Class Counsel to obtain the maximum possible recovery in the shortest time possible given the circumstances. *See Haught v. Summit Resources, LLC*, 2016 WL 1301011 at *8 (M.D. Pa. 2016) (Jones, J.). The requested percentage of the Settlement Fund – 33 1/3% of the Maximum Gross Settlement Amount after deducting Class Counsel's costs and expenses – is commensurate, reasonable and in line with multiple other settlements. In cases with funds ranging from $400,000 to $6.5 million, as here, courts routinely award fees "ranging from thirty to forty-three percent." *Erie Cnty. Retirees Ass'n v. Cnty. of Erie*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) (citing *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 342-43 (W.D. Pa. 1997)); *see also Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11,

2007).[9]

Moreover, the reasonableness of the percentage of the recovery award here is confirmed by cross-checking it with Class Counsel's lodestar. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305-06. "Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Prudential II*, 148 F.3d at 341 (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, §14.03 at 14-5 (3d ed. 1992); *see also Hegab*, 2015 WL 1021130 at *15 (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 734, 742 (3d Cir. 2001)) (approving a suggested multiplier of three and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472 at *8 (M.D. Pa. 2008) ("Lodestar multiples of less than four (4) are well within the range awarded by district courts in the Third Circuit."); *In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa 2007); *In re Rent-Way Securities Litigation*, 305 F. Supp. 491, 517 (W.D. Pa. 2003). "Multiples ranging from one to four are

---

[9] Numerous courts within the Third Circuit and this District have awarded fees equal to or exceeding 33 1/3% in wage and hour class and collective actions. See, *e.g., Lucia v. McClain & Co.*, Civil Action No. 11-cv-930 (CCC-MF), 2015 U.S. Dist. LEXIS 164584 (D.N.J. Dec. 8, 2015) (42%); *Lovett v. Connect Am..com*, No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *14-15 (E.D. Pa. Sep. 11, 2015) (38.26%); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, at *29 (E.D. Pa. Apr. 14, 2015) (35%); C*reed*, 2013 U.S. Dist. LEXIS 132911, at *17 (33 1/3%); *Brumley*, 2012 U.S. Dist. LEXIS 40599, at *36 (33 1/3%).

frequently awarded in common fund cases when the lodestar method is applied."
*Prudential II*, 148 F.3d at 341 (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, §14.03 at 14-5 (3d ed. 1992); *In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 512 F. Supp. 2d at 287; *In re Rent-Way Securities Litigation*, 305 F. Supp. 2d at 517; *In Re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998)). "The court is not required to scrutinize every billing record but may, instead, rely on summaries submitted by the attorneys. *Hegab*, 2015 WL 1021130 at *15.

As discussed further *infra,* Class Counsel and Local Counsel's combined lodestar is approximately $481,481.00, which results in a multiplier of approximately 1.23, the request here falls well below the middle of the 1x to 4x range.

In the Settlement Agreement the parties agreed to an award of $611,876.39 for attorneys' fees and litigation costs, of which $594,061.80 are for attorneys' fees and $17,814.59 are for costs and expenses that Class Counsel incurred. (*See* Dkt. No. 91-1.). In pursuing this case, Class Counsel and Local Class Counsel have accrued $481,481.00 in fees. (Hepworth Decl. ¶¶ 31, 36). The fee request amounts to (33 1/3 %) thirty-three and one-third percent of the remaining amount of funds of the Maximum Gross Settlement Amount (which is $1,800,000.00) after

deducting Class Counsel's costs and expenses of $17,814.59. As explained below, the factors from *Tavares* and *Gunter* weigh in favor of approving the requested fee.

**a. Size of the Fund and Number of Persons Benefitted (Factor 1)**

First, the fund created by the Settlement is $1.8 million and the total number of FLSA Class Members and Pennsylvania Rule 23 is 722. The average gross amount per each of the participating Pennsylvania Rule 23 and FLSA Class Members is receiving is approximately $1,619.28, which is an excellent result for the small window of time that class and collective members could claim damages for. *See* discussion *supra* at 2-6. Inasmuch as the result achieved is an important factor to be considered in assessing the propriety of an attorneys' fee award, this settlement certainly meets this standard. *Hensley v. Eckerhart, 461* U.S. 424,436 (1983) ("the most critical factor is the degree of success obtained"). In addition, Class Counsel is well experienced in these kinds of cases, (Hepworth Decl. ¶ 25) and believes that the settlement represents an excellent result. Accordingly, this factor is met. *See In re Ikon Office Solutions Inc. Sec. Litig*., 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel

prosecuted the case and the performance and quality of opposing counsel.'")
(internal citations omitted).

**b. Presence or Absence of Substantial Objections (Factor 2)**

Not a single person has objected to either the settlement agreement or the
proposed fee award. That "weighs in favor of approval." *See Creed*, 2013 WL
5276109, at *5; *Bredbenner*, 2011 WL 1344745, at *20. "The fact that not a single
objection has been filed to the Settlement . . . is strong evidence that counsel for
the Class have achieved a very good result for the Class." *Lan* v. *Ludrof,* 2008 WL
763763, at *23 (W.D. Pa. Mar. 21, 2008); *see also In re Rite Aid Corp. Sec. Litig.,*
396 F.3d at 305 ("The District Court did not abuse its discretion in finding the
absence of substantial objections by class members to be the fee requests weighed
in favor of approving the fee request."); *Careccio* v. *BMW of N. Am. LLC,* 2010
WL 1752347, at *7 (D.N.J. Apr. 29, 2010) (one of the "strong indicators" that a fee
request was fair and reasonable was that "[n]one of the objector letters mentioned
the fee award.").

**c. Skill and Efficiency of Attorneys Involved and the Amount of Time Devoted
to the Case (Factors 3 and 6)**

The Pennsylvania Rule 23 Class and FLSA Class is represented by
experienced counsel who have invested substantial time and resources into the
prosecution of this litigation. (Hepworth Decl. *generally*) They have served as
Class Counsel in numerous class and/or collective actions, including many

significant wage and hour misclassification cases involving retail managerial

misclassifications. Class Counsel was co-lead counsel in *Fermin v. Rite Aid of*

*New York, Inc.*, 1:08-cv-11364 (S.D.N.Y.), which settled as part of *Craig v. Rite*

*Aid* for $20,900,000*,* a case litigated before Your Honor; co-counsel in *Youngblood*

*v. Family Dollar,* 1:09-cv-03176 (S.D.N.Y) a misclassification case that was

certified and subsequently settled for 14 million; and lead counsel in *Costello, et.*

*al. v. Kohl's Illinois Inc. et. al.,* 1:13-cv-1359 (S.D.N.Y.), a wage and hour

misclassification case certified under FLSA 216(b) as a collective action that

settled for $4,000,000.00 among many others (Hepworth Decl ¶ 25). As

importantly, Class Counsel steered the case from inception through contested

conditional certification briefing. The case was then aggressively mediated by

both sides to reach the settlement terms. (Hepworth Decl. ¶ 15-18). To be sure,

Class Counsel acted swiftly and efficiently to preserve the claims of potential

collective action members by successfully filing Plaintiffs' conditional certification

motion less than four months after filing the complaint, as discussed above,

without the benefit of paper discovery or depositions.

For all of these reasons – which is a bare summary of what was done[10] –

Class Counsel expended approximately 744.28 hours of professional time and

---

[10] The tasks that Class Counsel performed are more fully set out in the
Declaration of Marc Hepworth. (Hepworth Decl. ¶ 24)

Local Class Counsel expended approximately 23 hours of professional time for an

aggregate lodestar of approximately $481,481.00.  (Hepworth Decl. ¶¶ 31, 36)

The hours reported are reasonable for a case of this complexity and magnitude, the

stage of the case and duration, all of which were compiled from contemporaneous

time records maintained by each attorney, paralegal, and support staff participating

in the case. In addition, there is still work yet to be done that will be necessary to

effectuate the administration of the Settlement which is recognized as necessary

and compensable.[11]  *Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called

upon to perform work after the final approval hearing, including answering class

member questions, answering questions from the claims administrator, and

negotiating and sometimes litigating disagreements with defendants about

administering the settlement and distributing the fund.").

**d. Complexity and Duration of the Litigation (Factor 4)**

This was not a simple case.  *See Brumley v. Camin Cargo Control, Inc.*,

2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) ("FLSA claims and wage-and-

hour law enforcement through litigation has been found to be complex by the

_____

[11] There will certainly be additional time that will be required to administer the
Settlement in the future. (Hepworth Decl. ¶ 38)  In Class Counsel's experience,
administering settlements of this nature and size requires ongoing commitment.
For example, based upon experience, such calls will continue through and beyond
final approval as class members report lost checks and request new ones, raise
questions about tax consequences and generally call for advice. *Id*.

Supreme Court and lower courts."). The Settlement, reached upon a full and fair

knowledge of the status of the claims and defenses in the case and the risks they

posed saved a substantial amount of time that otherwise would have been spent on

more discovery, motion practice, and pretrial activities. In short, "[t]he Settlement

saves the parties substantial time and money." *In re Datatec Sys. Inc. Securities*

*Litig.,* 2007 WL 4225828 at *7.

### e. Risk of Nonpayment (Factor 5)

The risk of nonpayment is significant. Class Counsel "undertook this action

on a contingent fee basis, assuming a substantial risk that they might not be

compensated for their efforts. Courts recognize the risk of non-payment as a factor

in considering an award of attorneys' fees. *In re Datatec Sys. Inc. Securities*

*Litig.*, 2007 WL 4225828, at *7; (Hepworth Decl. ¶ 30). As this Court wrote in

approving a fee in another retail misclassification case, "concerning the risk of

nonpayment, we note that because Class Counsel accepted this case on a

contingent fee basis, the risk of nonpayment was and remained substantial

throughout." *Craig*, 2013 WL 84928, at *12.

### f. Awards in Similar Cases (Factor 7)

The requested one third fee is consistent with awards in similar cases,

including wage and hour cases within this Circuit. *See Craig*, 2013 WL 84928, at

*11–14 (approving 32% fee award in $20.9 million retail misclassification

settlement and citing cases); *Creed*, 2013 WL 5276109, at *6 ("an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit"); *Stallard v. Fifth Third Bank*, slip op., 12-cv-01092, Dkt. No. 181 (W.D. Pa. Feb. 25, 2015) (fee of approximately one third of $3.25 million); *Martin*, 2008 WL 906472 at *8 (awarding 30% of the settlement fund).

### g. Percentage Fee That Would Have Been Negotiated if the Case Had Been Subject to a Private Contingent Fee Arrangement (Factor 9)

This factor "requires the Court to evaluate whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace." *Tavares*, 2016 WL 1743268 at *12 (internal quotations omitted). "The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee [that] would be negotiated if the lawyer were offering his or her services in the private marketplace." *Id*. (internal quotations and citations omitted). Here, Class Counsel does have a contingent fee arrangement and is seeking (33 1/3 %) thirty-three and one-third percent of the Maximum Gross Settlement Amount after deducting for costs, which is consistent with its contingent fee arrangement, and "is customary in standard industry practice." *Id.* at *12; (Hepworth Decl. ¶ 30)

### 2. Fees: Lodestar Cross-Check

As state above, the fee negotiated by counsel for both sides is supported under the lodestar cross-check. To determine the lodestar cross-check, the court must

calculate the lodestar multiplier. *Bredbenner*, 2011 WL 1344745 at *21. "The multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar." *Id.* The court is not required to review actual billing records but may instead rely on summaries submitted by the attorneys. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-307 (internal citations omitted).

The multiplier "represents 'the contingent nature or risk involved in a particular case and the quality of the attorneys' work.'" *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306). As stated previously, a multiplier of 1 to 4 times is often awarded in fee applications similar to the one herein. "Multiples ranging from one to four are frequently awarded in gross settlement fund cases when the lodestar method is applied." *Prudential II*, 148 F.3d at 341 (quoting Herbert Newberg & Alba Conte, Newberg on Class Actions, §14.03 at 14-5 (3d ed. 1992)); *In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 512 F. Supp. 2d at 287; *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491,517 (W.D. Pa. 2003); *In Re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 489); *see also Hegab*, 2015 WL 1021130 at *15 (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742). Indeed, "[t]he Third Circuit has approved a cross-check multiplier of 3 in a 'relatively simple' case that did not involve the application of several state laws or carry risks as to liability." *Bredbenner*, 2011 WL 1344745 at *22 (internal

citations omitted). As set out in detail in the Declaration of Marc Hepworth, Class Counsel and Local Class Counsel have a combined lodestar of $481,481.00, which produces a lodestar multiplier of approximately 1.23. (Hepworth Decl. ¶ 31, 36) Thus, this fee request is well within the range of reasonableness.

### 3. Costs

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995). The total amount of the out-of-pocket costs incurred by Class Counsel in this case is $17,814.59 and Class Counsel is entitled to reimbursement in that amount. (Hepworth Decl. ¶ 40.).

### IV. CONCLUSION

For all of these reasons, the court should (i) certify the FLSA Class and Pennsylvania Rule 23 Class for settlement and final approval purposes, (ii) approve Plaintiff William Cambridge and Mary Penatzer as the Class Representatives for the FLSA Class and Pennsylvania Rule 23 Class for settlement purposes; appoint as Lead and Class Counsel for the FLSA Class and Pennsylvania Rule 23 Class the law firm Hepworth, Gershbaum & Roth, PLLC,; appoint as Local Class Counsel for the FLSA Class and Pennsylvania Rule 23 Class Gregory Spizer of the law firm Anapol Weiss,; finally approve the settlement as fair, reasonable, and

adequate under the FLSA and Rule 23, (iii) approve the service awards for the

Class Representatives, (iv) approve the award of fees and costs for Class Counsel

and Local Class Counsel; and (v) enter the Final Approval Order; and (vi) and

reserve jurisdiction over the implementation, administration, and enforcement of

the judgment and the Agreement and all matters ancillary to the same.

Dated: June 21, 2019
          New York, NY

> By:         *s/ Marc S. Hepworth*
> Marc S. Hepworth (NY 2965812)
> David A. Roth (NY 2455590)
> Charles Gershbaum (NY 2424190)
> Rebecca Predovan (NY 4795837)
> HEPWORTH GERSHBAUM & ROTH PLLC
> 192 Lexington Avenue, Suite 802
> New York, New York 10016
> Telephone: (212) 545-1199
> Facsimile: (212) 532-3801
> E-mail: mhepworth@hgrlawyers.com
>             droth@hgrlawyers.com
>             cgershbaum@hgrlawyers.com
>             rpredovan@hgrlawyers.com
>
>
> Gregory Spizer (PA 82435)
> ANAPOL WEISS
> One Logan Square
> 130 N. 18th St, Ste 1600
> Philadelphia, PA 19103
> Telephone: (215) 735-1130
> Facsimile: (215) 875-7722
> E-mail: gspizer@anapolweiss.com
>
> **Attorneys for Plaintiffs and Opt-Ins**